**UNITED STATES of America,**

v.

**Cesar ELIZONDO.**

No. L–00–937–11.

United States District Court,
S.D. Texas,
Laredo Division.

July 24, 2002.

H. Jack Pytel, Jr., Attorney at Law, San Antonio, TX, David L. Botsford, Attorney at Law, Austin, TX, Michael D. Krejci, Clarendon Hills, IL, for Cesar Elizondo.

Cesar Elizondo, Romeoville, IL, pro se.

Jose Angel Moreno, Office of U.S. Attoreny, Pretrial Services–LA, U.S. Probation, Laredo, TX, Financial Litigation, U.S. Attorney's Office, Houston, TX, for United States of America.

## MEMORANDUM AND ORDER

ELLISON, District Judge.

Pending before the Court is Defendant Cesar Elizondo's Supplemental Motion for New Trial. For the following reasons, Defendant's Motion[1] is GRANTED.

### I. Facts and Procedural History

After a five-day jury trial, Defendant was convicted of one count of conspiracy to possess with intent to distribute, and conspiracy to distribute, a quantity in excess of ten kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1).

The charges against Defendant arose from a large-scale investigation by the Drug Enforcement Administration that led to cocaine seizures in Laredo, Texas; Fort Worth, Texas; Houston, Texas; and Chicago, Illinois. Defendant was directly implicated only in the Chicago seizure.

Trial of the Defendant and one of his co-defendants, Aguinaldo Roel Hernandez, began on February 26, 2001. At trial, the Government presented evidence that on March 16, 1998, two undercover agents drove a tractor-trailer loaded with cocaine to a construction site located outside of Chicago, Illinois. Defendant and his brother-in-law, Juventino Gutierrez, were at the site, and helped the undercover agents transfer two sealed crates containing the cocaine to a blue pickup truck. Defendant then left the site as a passenger in the blue pickup truck, which was driven by Gutierrez. Soon thereafter, local police officers stopped the pickup truck as it approached Defendant's home in Romeoville, Illinois. Defendant was arrested after officers discovered cocaine in the

---

1. As discussed herein, the Court has treated the pending motion as a motion for reconsideration of the Court's previous ruling denying Defendant's Motion for New Trial.

crates that had been loaded onto the pick-up truck. Defendant made statements to one of the arresting officers, in which he denied knowledge of the fact that cocaine was in the crates. He stated that he had just gone to the construction site to help his brother-in-law, and that, if anything, he suspected that the crates contained stolen laptop computers or automotive parts. Defendant also made a number of inconsistent statements to the officer regarding the circumstances under which the crates were loaded onto the pickup truck.

At trial, the Government also introduced evidence that, in connection with his arrest on March 16, 1998, Defendant had pled guilty in Illinois state court to unlawful possession of a controlled substance with intent to deliver. The Court overruled Defendant's objection to the admission of this evidence. Defendant then took the stand and testified that he pled guilty to a lesser included offense in state court solely to avoid a fifteen-year mandatory minimum sentence. Because he pled guilty to a lesser included offense, Defendant only served approximately five months of impact incarceration for the state conviction before being released on parole. When confronted with the state court guilty plea in the federal trial, Defendant continued to deny that he had any knowledge prior to his arrest that the crates in the pickup truck contained cocaine.

The jury returned a verdict of guilty in the instant case on March 2, 2001. On March 8, 2001, Defendant filed an unopposed motion seeking an extension of time in which to file a motion for new trial. Also on March 8, 2001, the Court granted Defendant's request and extended by thirty days the time in which to file a motion for new trial. On April 6, 2001, Defendant filed a Motion for New Trial in which he alleged (1) that the Court erred in admitting evidence of Defendant's guilty plea in Illinois state court; (2) that the evidence at

trial was insufficient to support a conviction; (3) that the Court erred in the course of questioning Defendant during the trial; (4) that the Court erred in denying Defendant's pretrial Motion to Dismiss based on double jeopardy; and (5) that the prosecutor, in his closing arguments, mis-stated the evidence regarding Defendant's Illinois state conviction and made legal arguments contrary to the Court's limiting instruction on the state court conviction.

On April 26, 2001, the Court ordered Defendant to file a memorandum of law in support of his Motion for New Trial by May 14, 2001. Defendant failed to file the memorandum of law within the specified time period, and the Court denied Defendant's Motion for New Trial on May 24, 2001.

The issue of Defendant's request for a new trial was not raised again until September 6, 2001, when, apparently as a result confusion on the part of the parties as well as the Court, a status conference led to an extended discussion of Defendant's "pending" Motion for New Trial. The Court also entered a written Order on September 6, stating that it was continuing the hearing on Defendant's "[p]ending" Motion for New Trial in order to give the Court and the parties an opportunity to review the trial transcript. The Court ordered Defendant to file a supplemental motion for new trial by October 18, 2001, ten days after the anticipated receipt of the trial transcript. However, the trial transcript was not received by Defendant in a timely fashion, and he filed a motion seeking to extend the time for filing a supplemental motion for new trial. The Court granted Defendant's Motion to Extend Time on October 18, 2001, and allowed him an additional fifteen days to supplement his Motion for New Trial. Defendant eventually filed a "Supplement to

Motion for New Trial" on November 2, 2001.

## II. Discussion

### A. Jurisdiction

■ Federal Rule of Civil Procedure 33 provides that "[a] motion for new trial based on any [grounds other than newly discovered evidence] may be made only within 7 days after the verdict or finding of guilty or within such further time as the court may fix during the 7–day period." A district court does not have jurisdiction to rule on the merits of a motion for new trial filed after the period of time allotted in the Federal Rules. *See United States v. Cook,* 670 F.2d 46, 48 (5th Cir.1982) (citing *United States v. Robinson,* 361 U.S. 220, 80 S.Ct. 282, 4 L.Ed.2d 259 (1960)).

The Government concedes that the Court's Order of March 8, 2001, enlarging by thirty days the time in which Defendant could file his Motion for New Trial, was appropriate under Rule 33, because the extension was granted during the seven-day period following the guilty verdict. *See* Gov't's Resp. to Def.'s Mot. for New Trial at 4. The Government also chooses not to challenge the propriety of the Court's Order of April 26, 2001, directing Defendant to submit a memorandum of law in support of the Motion for New Trial timely filed on April 6, 2001.[2] The Gov-

ernment does assert, however, that having denied Defendant's Motion for New Trial on May 24, 2001, the Court does not have jurisdiction to consider the merits of Defendant's Supplemental Motion for New Trial, which was not filed until November 2, 2001.

The Government is correct in pointing out that the instant motion cannot properly be called a "supplement" to the Motion for New Trial filed by Defendant on April 6, 2001. Because the Court denied Defendant's Motion for New Trial on May 24, 2001, there is no pending motion that Defendant may supplement, and his "Supplement to Motion for New Trial" cannot relate back to the timely-filed Motion for New Trial, for purposes of complying with the time limitations contained in Rule 33. However, the Supplemental Motion for New Trial can properly be deemed a motion for reconsideration of the Court's ruling on the Motion for New Trial,[3] *see United States v. Greenwood,* 974 F.2d 1449, 1466 (5th Cir.1992) (stating that any request, however phrased, that a district court "reconsider a question decided in the case in order to effect an alteration of the rights adjudicated" qualifies as a motion for reconsideration), and the pivotal question then becomes whether the Court has jurisdiction to reach the merits of this motion for reconsideration.

---

**2.** The Government, while conceding only that the April 26 Order was "arguably permissible," fails to cite any authority that would support the contrary proposition that a district court lacks jurisdiction to consider supplemental briefing that it finds necessary to the disposition of a timely-filed motion for new trial, and therefore orders a defendant to provide. Neither has the Court located any such authority. Although the Court is aware of its obligation to raise the issue of its jurisdiction *sua sponte* under certain circumstances, *see United States v. Brewer,* 60 F.3d 1142, 1143 (5th Cir.1995), it need not resolve the novel jurisdictional issue presented by the April 26 Order in the context of the instant

case. The Court's finding that Defendant's Supplemental Motion for New Trial is timely filed as a motion to reconsider does not hinge on the propriety of the April 26 Order, and resolution of this issue would have no effect on the Court's decision to reconsider the merits of Defendant's Motion for New Trial.

**3.** In the instant case, the Court finds it particularly appropriate to look beyond the title Defendant has given the pending Motion. That is because any error in labeling the pleading a Supplemental Motion for New Trial was invited by the Court, which on September 6, 2001, ordered Defendant to file a motion so entitled.

■ Although a motion for reconsideration of a district court order affecting final judgment is nowhere explicitly authorized by the Federal Rules of Criminal Procedure, it has long been recognized as a legitimate procedural device. *See, e.g., United States v. Dieter,* 429 U.S. 6, 8–9, 97 S.Ct. 18, 50 L.Ed.2d 8 (1976) (per curiam); *United States v. Healy,* 376 U.S. 75, 78–80, 84 S.Ct. 553, 11 L.Ed.2d 527 (1964); *Cook,* 670 F.2d at 48. It also is well established that, in criminal proceedings, petitions for rehearing of orders affecting final judgment are timely if filed within the period allotted for the noticing of an appeal. *Cook,* 670 F.2d at 48 (citing *Browder v. Director, Dep't of Corrections,* 434 U.S. 257, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978)). An untimely motion for reconsideration is beyond the jurisdiction of a district court. *Id.*

The time period allotted for notice of appeal is set forth in the Federal Rules of Appellate Procedure (FRAP), which provide that "[i]n a criminal case, a defendant's notice of appeal must be filed in the district court within 10 days after *the later of* the entry of either the judgment or the order being appealed...." FED. R.APP. P. 4(b)(1) (emphasis added). FRAP further states that

> [i]f a defendant timely makes any of the following motions under the Federal Rules of Criminal Procedure, [including a timely motion for a new trial under Rule 33], the notice of appeal from a judgment of conviction must be filed within 10 days after the entry of the order disposing of the last such remaining motion, or within 10 days after the entry of the judgment of conviction, *whichever period ends later.*

FED. R.APP. P. 4(b)(3) (emphasis added). To date, no judgment of conviction has been entered in the instant case. Accordingly, the period allotted for noticing an appeal of the Court's Order of May 24, 2001, denying Defendant's Motion for New Trial, has not yet run. *Id.* This fact would appear to support a finding that the motion for reconsideration is timely filed. *See Cook,* 670 F.2d at 48.

Despite the fact that it is undisputed that Defendant's motion for reconsideration was filed within the period of time allotted for the noticing of an appeal,[4] the Government nonetheless argues that *Cook* requires the Court to find that the motion for reconsideration was not timely filed. In *Cook,* Defendant filed a motion for new trial on the basis of newly discovered evidence approximately one year after his judgment of conviction had been affirmed on appeal. 670 F.2d at 47. Defendant then filed a motion for reconsideration fifty-six days after his motion for new trial was denied. *Id.* After stating the general rule that a motion for reconsideration is timely if filed within the period allotted for noticing an appeal, the Fifth Circuit held that Cook's motion for reconsideration was not timely: "In a case such as the one *sub judice,* where the petition for reconsideration was filed by the defendant, the petition is timely if filed within ten days of the entry of judgment. FED. R.APP. P. 4(b). Here, the order overruling the motion for new trial was the judgment." *Cook,* 670 F.2d at 48; *see also United States v. Miller,* 869 F.2d 1418, 1420–21 (10th Cir.1989) (adopting the reasoning of *Cook* ). The Government relies on this aspect of *Cook* to argue that a defendant's motion for reconsideration is timely only if it is filed within ten days of the order denying the motion for new trial.

The Government misreads *Cook* entirely. The *Cook* court did not hold that an

---

4. The Government does not argue that the period has expired in which Defendant may file an appeal of this Court's Order denying the Motion for New Trial, and has no basis for doing do. *See* F ED. R.APP. P. 4(b)(3).

order denying a motion for new trial is, in categorical terms, the equivalent of a judgment, as the Government asserts. Rather, the order denying the motion for new trial was the "judgment" that triggered the relevant appeal period only because, under the particular facts presented in *Cook*, the underlying judgment of conviction had been entered, and the appeal period for the same had run, *before* the motion for new trial was filed or ruled upon. *Cook* is in that regard inapposite to the instant case, in which no judgment of conviction has yet been entered.

Furthermore, to the extent that *Cook* has been read as setting forth a general rule that a motion for reconsideration must be filed within ten days of the order denying a motion for new trial in order to be timely, *see, e.g., United States v. Ramirez*, 954 F.2d 1035, 1038 (5th Cir.1992), such a reading does not survive the 1993 amendments to FRAP 4(b), the rule on which the *Cook* court relied in reaching its ultimate conclusion regarding timeliness. Prior to December 1, 1993, FRAP 4(b) provided:

> In a criminal case the notice of appeal by a defendant shall be filed in the district court within 10 days after the entry of the judgment or order appealed from.... If a timely motion in arrest of judgment or for a new trial on any ground other than newly discovered evidence has been made, an appeal from a judgment of conviction may be taken within 10 days after the entry of an order denying the motion. A motion for new trial based on the ground of newly discovered evidence will similarly extend the time for appeal from a judgment of conviction if the motion is made before or within 10 days after entry of the judgment.

FED. R.APP. P. 4(b) (1992). Accordingly, prior to 1993, FRAP 4(b) was ambiguous as to whether an appeal from an order denying a motion for new trial was timely only if filed within ten days of the challenged order, regardless of whether the judgment of conviction had been entered at that time. *See* FED. R.APP. P. 4 advisory committee's note (1993). The 1993 amendments, which added the current FRAP 4(b)(3), cited above, were intended to make clear that a notice of appeal of an order denying a motion for new trial need be filed within ten days of the challenged order *or* the entry of judgment, *whichever is later. Id.* Subsequent to 1993, courts have cited *Cook* only for its holding that criminal case motions for reconsideration are timely if filed within the time prescribed for noticing an appeal under FRAP 4(b), *see, e.g., United States v. Brewer*, 60 F.3d 1142, 1143 (5th Cir.1995), and not for the more specific proposition that a motion for reconsideration must be filed within ten days of an order denying a motion for new trial.

"[A] district court has the inherent power, and thus jurisdiction, to reconsider interlocutory orders prior to entry of judgment on such orders." *United States v. Breit*, 754 F.2d 526, 530 (4th Cir.1985); *see also Cook*, 670 F.2d at 48. The Court's Order of May 24, 2001, denying Defendant's Motion for New Trial is an interlocutory order, as no judgment of conviction has yet been entered in the instant case. Any appeal of the relevant order will not be ripe until such a judgment is entered. FED. R.APP. P. 4(b). Accordingly, Defendant's motion for reconsideration was timely filed within the period allotted for the noticing of an appeal, and the Court has jurisdiction to reconsider the merits of Defendant's Motion for New Trial.

**B. *Reconsideration of Defendant's Motion for New Trial***

According to the Federal Rules of Civil Procedure, a court on motion of a defendant may grant a new trial if required in the interest of justice. FED.R.CRIM.P. 33. The decision to grant or deny a new trial is

within the sound discretion of the trial court. *United States v. Schnitzer*, 145 F.3d 721, 731 (5th Cir.1998); *United States v. Robertson*, 110 F.3d 1113, 1118 (5th Cir.1997). However, the trial court grants a new trial only if any error that it identifies rises above the level of harmless error. *United States v. Munoz*, 150 F.3d 401, 413 (5th Cir.1998) (citations omitted). "An error is harmless if it is 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *United States v. Honer*, 225 F.3d 549, 555 (5th Cir.2000) (quoting *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). Possible grounds for granting a motion for new trial include an erroneous evidentiary ruling that prejudices a defendant, *Schnitzer*, 145 F.3d at 730–31, and/or a jury verdict that is against the weight of the evidence, *Robertson*, 110 F.3d at 1118.

### 1. The Admission of Defendant's State Court Conviction and Plea

Defendant first urges the Court to reconsider its previous determination that admission of his guilty plea and conviction in Illinois state court does not warrant a new trial.

Prior to jury selection, Defendant moved for the exclusion of evidence of his conviction, based on a guilty plea, in Illinois state court for unlawful possession of a controlled substance, a Class 1 felony.[5] The Court overruled Defendant's objection, and allowed the Government to admit, in its case-in-chief, Government Exhibit 63 ("GE 63"), which refers both to the guilty plea and to the judgment of conviction.[6] IV R 68–72; Gov't Ex. 63. Again over Defendant's objection, the Court later allowed the Government to impeach Defendant with the guilty plea. IV R 148–54. At Defendant's request, the Court did not issue any instruction limiting the jury's consideration of the plea and conviction, with respect to the case against Defendant, until the close of evidence.[7] In its final instructions to the jury, the Court stated that the jury could consider the judgment of conviction, if at all, only with regard to Defendant's credibility, and not as sub-

---

**5.** In his motion for reconsideration, Defendant asserts that he filed a written motion in limine urging the Court to exclude the Illinois plea and conviction. Although the record does not contain a copy of any such motion in limine, the record does support Defendant's assertion that a written motion in limine was filed. For example, the courtroom minutes from February 26, 2001 (Docket 128) state that a "Motion in Limine [was] filed by [Defendant] Elizondo." Furthermore, the Court, when overruling Defendant's objection to admission of the evidence, stated to Defendant's trial counsel, "Mr. Krejci, I've had a chance to look at your Motion in Limine." I R 183. In any event, the record clearly reflects that Defendant orally objected to admission of both the conviction and the guilty plea, and specifically to the admission of Government Exhibit 63 ("GE 63"), and that this evidence was admitted over Defendant's objection. I R 183–84; IV R 68–72; IV R 148–54.

**6.** In its initial ruling on Defendant's Motion in Limine, the Court specifically addressed only the admissibility of the judgment of conviction, and did not discuss the admissibility of

Defendant's guilty plea. I R 183–84. However, on the basis of this ruling, the Court allowed the Government to admit evidence of both the plea and the conviction through the admission of GE 63. IV R 68–72. During Defendant's case, the Court specifically allowed the Government to impeach Defendant with evidence of admissions purportedly made as part of the guilty plea, over defense counsel's objection that no such admission had been made, and that there was no evidence of any such admission. IV R 148–154.

**7.** Defendant first raised the issue of a limiting instruction on the second day of trial, and the Court indicated its willingness to consider such an instruction in order to eliminate jury confusion. II R–86. However, on the fourth day of trial, after the Government admitted GE 63, defense counsel stated that he thought a contemporaneous limiting instruction would have an intensifying effect, and requested that the limiting instruction be deferred until the Court issued its final instructions to the jury. IV R 72–83. At the request of Defendant's co-defendant, the Court did

stantive evidence of the charged conspiracy. V R 31–32. This limiting instruction was submitted to the Court by the Government in its proposed jury instructions. IV R 327–28. The parties did not propose an instruction limiting the jury's consideration of Defendant's guilty plea, and the Court did not issue any such limiting instruction.

Because "there is a distinct and meaningful difference between the evidentiary use of a plea to a criminal charge and a conviction of a criminal charge," *United States v. Williams*, 642 F.2d 136, 139 (5th Cir. Unit B Apr.1981), the propriety of the Court's evidentiary ruling regarding the Illinois judgment of conviction must be reviewed separately from the its ruling allowing admission of Defendant's guilty plea. However, since GE 63 constitutes evidence both of the conviction and of the guilty plea, the Court must find that it erred in admitting GE 63 if it was error to allow *either* the judgment of conviction *or* the guilty plea to come into evidence. *See United States v. Morrow*, 537 F.2d 120, 144–45 (5th Cir.1976).

### a. The admission of Defendant's state court conviction

■ A judgment of conviction entered upon a plea of guilty is not hearsay, and may be admissible as substantive evidence to prove any fact essential to sustain the judgment. FED.R.EVID. 803(2); *see also Dunham v. Pannell*, 263 F.2d 725, 730 (5th Cir.1959) (evidence of criminal judgment may be used to prove "the truth of the facts alleged or implicit in the criminal charge on which the judgment is based").

Moreover, unlike evidence of other acts extrinsic to the charged crime, the admission of intrinsic other act evidence does not implicate, and is not limited by, Federal Rule of Evidence ("FRE") 404(b). *United States v. Coleman*, 78 F.3d 154, 156 (5th Cir.1996). Other act evidence is intrinsic to the charged offense "when the evidence of the other act and the evidence of the crime charged are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged." *United States v. Williams*, 900 F.2d 823, 825 (5th Cir.1990) (internal quotations and citations omitted). However, even intrinsic other act evidence must be excluded under FRE 403 if its probative value is substantially outweighed by the danger of unfair prejudice. *See United States v. Royal*, 972 F.2d 643, 648 (5th Cir.1992). A judgment of conviction also may be used against a criminal defendant for impeachment purposes if the trial court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused. FED.R.EVID. 609(a)(1). Under Fifth Circuit case law, it is error for the trial court to admit, for impeachment purposes, evidence of a defendant's previous conviction of a substantive offense that arises out of the same transaction as a charged conspiracy, during defendant's trial on the conspiracy charge. *United States v. Martinez*, 555 F.2d 1273, 1276–1277 (5th Cir.1977) ("*Martinez II*").[8]

Unfortunately, in the instant case, the record is confused as to the purpose or

---

issue a contemporaneous instruction to the jury limiting its consideration of GE 63 to Defendant Elizondo. IV R–83.

**8.** In *Martinez II*, prior to his trial for conspiracy to distribute cocaine, the defendant was convicted of aiding and abetting the distribution of cocaine. *See United States v. Martinez*, 555 F.2d 1269, 1270 (5th Cir.1977)

("*Martinez I*") (affirming defendant's conviction for aiding and abetting). The aiding and abetting conviction arose out of the same transaction that was the subject of the conspiracy charge. *Martinez II*, 555 F.2d at 1274. During the conspiracy trial, the trial court ruled, before the defendant took the stand, that defendant could be impeached with the aiding and abetting conviction. *Id.*

purposes for which evidence of the Illinois judgment of conviction was admitted. In ruling on Defendant's Motion in Limine, the Court cited an unpublished Fourth Circuit case, *United States v. Aladekoba*, 1997 WL 712894, 1997 U.S.App. LEXIS 32161 (4th Cir. Nov. 17, 1997), for the proposition that a prior conviction for possession of the same drugs as those at issue in a conspiracy charge was properly admitted as direct evidence of the conspiracy. I R 183–184. At the same time, the Court recognized that admission of the conviction posed some risk of jury confusion (the potential nature of which was not specified), thus presenting a FRE 403 issue that warranted an instruction to the jury. *Id.* The fact that a limiting instruction would be given, but not the instruction's specific contents, was again discussed during the second day of trial, II R 186, and then immediately after the conviction was introduced as substantive evidence in the Government's case-in-chief. IV R 72–83. The fact of the Illinois conviction was not again addressed *per se* until the end of the fourth day of trial, when the parties discussed their proposed final jury instructions.[9] IV R 327–28. The Court, in its final jury instructions, eventually issued a limiting instruction proposed by the Government and agreed to by Defendant, and informed the jury that it could consider Defendant's state court conviction only for the purpose of evaluating his credibility, and specifically instructed the jury *not* to consider the prior conviction as proof of the crime charged. V R 31–32.

In light of the final instructions given to the jury, the Court must find that the state court judgment of conviction was admitted and used for impeachment purposes at the conspiracy trial. Because the state court conviction and the conspiracy charge both arose out of the same transaction, the Court erred in admitting the conviction for impeachment purposes. *Martinez II*, 555 F.2d at 1276–77.

Furthermore, because the Government did not object to the limiting instruction, and in fact proposed the instruction at issue, the Government cannot now argue that the conviction was properly admitted, and considered by the jury, as substantive evidence, and therefore that its improper admission for impeachment purposes necessarily was harmless.[10] *See United States v. Montoya–Ortiz*, 7 F.3d 1171, 1177 n. 8 (refusing to consider on appeal contention that instruction improperly limited jury's instruction of evidence when govern-

---

Accordingly, when Defendant took the stand, defense counsel revealed the prior conviction on direct examination. *Id.* The Fifth Circuit held that the trial court erred in admitting the prior conviction, and reversed defendant's conspiracy conviction arising from the second trial. *Id.* at 1277.

9. The admissibility of Defendant's guilty plea, but not of the judgment of conviction, was addressed at some length during Defendant's trial testimony. IV R 228–231, 248–254.

10. The Court agrees with the Government that the fact that the Court admitted GE 63 during the Government's case-in-chief indicates that the Court at least initially admitted the conviction as substantive evidence. The Court's statements when overruling Defen-

dant's Motion in Limine also support that conclusion. However, the Court's statements were made outside the presence of the jury, and the Court does not believe that it is reasonable to assume that the jurors were familiar enough with trial procedure to conclude, based on the timing of GE 63's admission, that the Court was allowing them to consider the conviction as substantive evidence of guilt. In any event, even if such a conclusion had been drawn or the Court's statements had been heard, the jury was clearly under an obligation to follow the Court's final instructions over any earlier rulings. Accordingly, whatever the Court may have intended at different points during the trial, the final instructions to the jury are binding as to the purpose for which the conviction was admitted and for which it could be considered.

ment did not object to instruction at trial); FED.R.CRIM.P. 30 ("No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict...."). Moreover, even if the Court were to entertain such an argument, it would find that admission of the state court conviction as substantive evidence was error under FRE 403, as the probative value of the evidence is substantially outweighed by the danger of unfair prejudice to Defendant.[11]

The Fifth Circuit has already spoken strongly about the prejudicial effect to a defendant's case that may result from admission of a prior conviction in a subsequent trial on a charge arising from the same transaction:

> The jury has just been told that a former fact-finder considered the identical factual circumstances and concluded that defendant was criminally culpable. The evidence in this case bordered on direct-

ing a verdict against the accused. While [committing the substantive drug offense] and conspiring are distinct and separate offenses, defendant's right to have the jury determine that the government has properly proven every essential element beyond a reasonable doubt was improperly prejudiced by the introduction of the former conviction.

*Martinez II*, 555 F.2d at 1276.[12] In the instant case, the only element disputed at trial was knowledge, and Defendant repeatedly asserted that he did not know that cocaine was in the crates he helped load onto his brother-in-law's truck. Admission of the state court conviction as substantive evidence would have exposed Defendant to a significant risk of unfair prejudice, because the jury would have been likely to base its verdict on the previous fact-finder's determination, grounded in identical factual circumstances, that a prosecutor had proved the nearly identical offense element of knowing possession,[13]

---

**11.** In the instant case, there can be no question that Defendant's state court conviction for possession of the same cocaine at issue in the federal conspiracy charge is other act evidence intrinsic to the charged crime, and thus is not subject to the limitations of FRE 404(b). *See Coleman*, 78 F.3d at 156. However, it remains subject to the restrictions of FRE 403. *See Royal*, 972 F.2d at 648.

**12.** In fact, although *Martinez II* does not directly so hold, the case does suggest in *dicta* that a prior conviction is not properly admissible as substantive evidence of guilt when the government seeks to admit it to prove a charge arising out of the same transaction as the conviction. For example, in addition to the language quoted above, the *Martinez II* court states the following:

> In effect, defendant claims that the jury's knowledge that he had previously been convicted on the basis of the identical transaction could not possibly have been used by the jury solely to reflect on his credibility but must necessarily have been used by them as evidence that he committed the

> crime in question *a legally impermissible inference. We agree.*

*Martinez II*, 555 F.2d at 1274 (emphasis added). In addition, if evidence of the prior conviction had been properly admissible as substantive evidence in *Martinez II*, it is unclear why its admission for impeachment purposes would not have constituted harmless error, thereby counseling against reversal of the second conviction. However, although this *dicta* in *Martinez II* informs the Court's application of the FRE 403 balancing test in the instant case, the Court does not base its ruling exclusively on *Martinez II*. Review of the particular circumstances in which the Fifth Circuit has approved admission of intrinsic other act evidence, *see* cases cited in main text, persuades the Court that admission of Defendant's state court conviction is not proper under the particular circumstances of this case.

**13.** GE 63 shows only that Defendant was convicted of unlawful possession of a controlled substance, a class 1 felony, and thus does not on its face indicate that knowledge was an essential element of the crime. However, the

rather than rely on its own evaluation of the underlying facts to determine whether the Government had met its burden of proof. *See Martinez II*, 555 F.2d at 1274, 1276–77. Furthermore, the conviction had no probative value with respect to any contested issue other than Defendant's knowledge,[14] and the conviction could only be used to prove that issue via an impermissible inference. Unlike other cases where courts have admitted intrinsic other act evidence, the state court conviction admitted here was not necessary to complete the story of the alleged crime, and was not useful to establish any relevant fact in a manner that did not require direct reliance on the first fact-finder's finding that an offense element had been established in order to prove that same offense element in the instant case. *See, e.g., Coleman*, 78 F.3d at 156–157 (admitting defendant's confession to failed carjacking efforts occurring immediately prior to charged carjacking in order to show defendant was not innocent bystander); *United States v. Royal*, 972 F.2d 643, 647 (holding that evidence of defendant's imprisonment on drug charges was admissible to show that defendant had ongoing drug business, in trial for charges that he continued business while in prison); *United States v. Torres*, 685 F.2d at 921, 924 (5th Cir.1982) (admitting, as intrinsic evidence, history of sample drug transactions between defendant and undercover officer leading up to ultimate large sale that was issue of charge); *see also Aladekoba*, 129 F.3d 1260, 1997 WL 712894, at *5, 1997 U.S.App. LEXIS 32161 at *16 (approving admission of underlying possession conviction as necessary probative link between defendant and location where drugs were stored in subsequent conspiracy case involving same drugs). Accordingly, even if the Court were free to review its ultimate decision to admit the conviction for impeachment purposes only, as evidenced by its final instructions to the jury, the Court would find that the state court conviction was not properly admitted as substantive evidence of Defendant's guilt, because the probative value of such evidence was substantially outweighed by its prejudicial effect.

### b. The admission of Defendant's guilty plea in state court

A guilty plea generally is admissible in a subsequent criminal trial as an admission by a party-opponent. Fed. R.Evid. 801(d)(2)(A); *United States v. Maestas*, 941 F.2d 273, 278 (5th Cir.1991). In contrast to a judgment of conviction, "the plea of guilty is offered not to prove that essential facts have been previously found to exist but rather to prove that the offender admitted facts constituting guilt." Michael H. Graham, Federal Practice and

---

state court plea colloquy does indicate that knowledge is an element of the crime of unlawful possession. *See* Tr. of Re-arraignment, June 7, 1999, p. 4, 13. Of course, if the Court were to rely exclusively on the face of the exhibit, the probative value of the conviction on the issue of knowledge would be reduced to nothing, since Defendant's possession of the cocaine was not contested, and "unlawful" possession adds nothing to possession itself as a matter of proving Defendant's knowledge. Under those circumstances, the offense of conviction would not even be relevant with respect to the issue of knowledge under FRE 401. Furthermore, to the extent that the Court relies only on the information contained within the four corners of GE 63, which does not show knowledge to be an essential element of the crime of conviction, FRE 803(22) would not operate to except the conviction from the hearsay rule on the issue of knowledge.

14. Because the probative value of evidence is not absolute, *see Williams*, 900 F.2d at 827, it is irrelevant whether the state court conviction is probative of uncontested issues such as possession. Because the Government did not need to prove this uncontested issue, the incremental probative value of the conviction on the issue is slight, and is easily outweighed by the conviction's prejudicial effect.

PROCEDURE: EVIDENCE § 7017 (Interim Edition 2000) (citing *Dunham*, 263 F.2d at 730). As an admission, a guilty plea may be introduced as substantive evidence in a defendant's trial on a charge arising from the same transaction as the plea itself. *Maestas*, 941 F.2d at 278–79. If a defendant later denies guilt in a manner inconsistent with his prior guilty plea, the plea also may be used to impeach defendant. *Williams*, 642 F.2d at 139.

■ If in entering his guilty plea in Illinois state court Defendant had admitted all of the specific facts supporting the judgment of conviction, as typically is done in federal court plea proceedings, then Defendant's plea clearly would be properly admitted both as substantive evidence of guilt and for impeachment purposes. *See Maestas*, 941 F.2d at 278–79; *Williams*, 642 F.2d at 139. However, Defendant has consistently argued, both during trial and in support of his motion for new trial, that when entering his Illinois guilty plea he never admitted knowledge of the fact that cocaine or any other controlled substance was in the relevant crates. *See, e.g.*, IV R 251–54. Instead, he has asserted, also with consistency, that he pled guilty despite his factual innocence in order to avoid a prison term in the range of 15 to 60 years. The transcript of Defendant's plea colloquy supports his assertion that he continued to deny knowledge of the fact that the crates contained a controlled substance even while he entered his guilty plea.[15] In this regard, Defendant's plea appears to have been entered under circumstances similar to those described in *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). *See also People v. Starks*, 30 Ill.App.3d 541, 333 N.E.2d 531, 534 (1975) (recognizing that *Alford* plea is proper under state law); *People v. Grant*, 1 Ill.App.3d 658, 274 N.E.2d 603, 605 (1971) (same). The fact that Defendant, even though formally admitting the essential elements of the of-

---

15. For example, in the factual basis presented to the Illinois state court in support of the guilty plea, the prosecutor recounted the details of Defendant's surveillance and arrest, and then continued,

> The defendant was interviewed, and he stated that he had received a call from his brother-in-law to help him move two crates, and that he would be paid-that they would each be paid $2,000 to move those crates. The defendant stated that he thought there was probably something illegal in the crates, but figured that it was either stolen laptop computers or car parts. Again, he was going to be paid $2,000 to move these crates. And that is the factual basis, your Honor.

Tr. of Re-arraignment, June 7, 1999, at p. 7. The Defendant admitted the facts contained in the factual basis, except he disputed that he had told the interviewing officer that he would be paid the specific amount of $2,000. *Id.* at 7–8. Based on all of the circumstances presented by the prosecutor, the state court found that there was a factual basis for the plea, even in the absence of an admission of knowledge. *See id.* at 8. Later during the plea colloquy, the prosecutor informed the court that the State of Illinois decided to reduce the charge against Defendant to a lesser included offense at least in part because the Defendant had a solid knowledge defense, and because the State was not sure that it could sustain its burden of proving Defendant's knowledge of the controlled substance in the sealed crates. *Id.* at 13. (continued on following page)

The Court notes its concern that the transcript of the state plea colloquy was not provided to the Court until more than a year after the verdict in the federal conspiracy trial. However, the Government was afforded an opportunity to object to the entry of the colloquy transcript into the record, *see* Docket 237, and failed to do so. Furthermore, the Court's concern regarding the delay in the production of the transcript is outweighed by its concern that Defendant's trial counsel's failure to introduce the transcript prior to or at the time of trial be corrected at this relatively early stage in the instant proceedings, i.e., before the judgment of conviction is entered, rather than become the subject of a prolonged appeal and/or habeas proceeding.

fense through the entry of his guilty plea, specifically did not admit knowledge reduces almost to zero the probative value of Defendant's guilty plea as an admission that he knew that the crates contained cocaine, which was the purpose for which the plea was offered. For impeachment purposes, it also reduces to zero the probative value of the guilty plea on the issue of Defendant's credibility, as the statements made in connection with the guilty plea are entirely consistent both with Defendant's trial testimony, as well as with other evidence presented at trial.[16] In contrast, the unfair prejudicial effect of the guilty plea was substantial, as evidence of the plea misleadingly suggested that Defendant had previously admitted specific knowledge of the cocaine in the crates, and that he was contradicting earlier statements made to the Illinois state court when he denied knowledge on the stand during the conspiracy trial.

In light of all of the above, the Court finds that it was error to admit evidence of Defendant's guilty plea as substantive evidence and for impeachment purposes, because the probative value of that evidence was substantially outweighed by the danger of unfair prejudice resulting from its admission.[17]

### c. Whether the Court's error in admitting evidence of the guilty plea and conviction warrants a new trial

██ The Court's error in admitting Defendant's guilty plea and conviction will not warrant a new trial "if it is 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Honer*, 225 F.3d at 555 (citing *Chapman v. California*, 386 U.S. at 24, 87 S.Ct. 824). When evidence is erroneously admitted, a new trial is necessary when there is a significant possibility that the prejudicial evidence had a substantial impact on the verdict, viewed in light of the entire record. *Id.* In the instant case, the Court finds that there is a significant possibility that admission of Defendant's state court guilty plea and conviction had a substantial impact on Defendant's conviction on the federal conspiracy charge.

Admission of the judgment of conviction created a meaningful risk that the jury in the instant case would make its finding of knowledge based upon the previous factfinder's determination of this issue, instead of upon its own evaluation of the relevant factual circumstances. *See Martinez II*, 555 F.2d at 1274, 1276–77. Moreover, admission of the guilty plea likely had an even greater impact on the verdict than admission of the conviction itself. In the Court's own words, when ruling on Defen-

---

16. For example, in the Government's case-in-chief, the Chicago Police Department officer who took Defendant's statement, Angel Lorenzo, testified that Defendant told him that he thought the crates contained stolen laptops or car parts. IV R 54–55. Later, when Defendant gave his own testimony, he stated that he did not know what was in the crates. IV R 227. Defendant also testified that he pled guilty to the lesser included charge because it reduced his sentence from a range of fifteen to sixty years to a term of five months in boot camp. IV R 229–31. Defendant again denied knowledge of the cocaine, or of the fact that his wife's family members were involved in drug trafficking. IV R 230.

17. In this regard, Defendant's *Alford*-type plea is much like a plea of nolo contendere, which the Federal Rules of Evidence specifically provide is not admissible. FED.R.EVID. 410; *United States v. Manzella*, 782 F.2d 533, 546 (5th Cir.1986). Although an *Alford* plea and a nolo contendere plea are not technically the same thing, the courts have long recognized that they have similar practical consequences. *See Alford*, 400 U.S. at 37, 91 S.Ct. 160. Accordingly, many of the policy arguments in support of FRE 410 also support exclusion of an *Alford* plea.

dant's Rule 29 motion at the close of the Government's case-in-chief:

> Well, I don't know a better form of demonstration of knowledge than somebody pleading guilty to it. I mean, if you can think of a better way to establish it, I'll entertain it, but I think that's pretty solid.... [R]ight now we have a largely—I guess an entirely unrebutted record of his having pled guilty to the substantive offense. And to jump from the substantive offense to the defense of conspiracy is not great when you have other people working with him to unload and load, to drive off.

IV R 179–80; *see also* IV R 253. At the time, the Court itself clearly equated Defendant's guilty plea with a specific admission of knowledge, although the Government had made no such showing. In addition, the Government repeatedly attacked the credibility of Defendant's denial of knowledge at trial with the misleading suggestion that his trial testimony was inconsistent with sworn statements made to the Illinois state court. IV R 248–254; V R 109–10; V R 116.

The remaining evidence against Defendant, though probably legally sufficient to sustain a verdict, was not so strong that the Court can with any confidence say that evidence of the guilty plea and conviction did not have a substantial impact on the jury's verdict. Moreover, the plea and the conviction did not merely duplicate evidence properly before the jury, therefore rendering their admission harmless. Specifically, Defendant had not already testified to knowledge before the Court admitted the plea and conviction, *cf. Manzella*, 782 F.2d at 547, and other evidence of Defendant's knowledge presented by the Government was limited and circumstantial. Finally, and perhaps most significantly, the Court failed to limit the possible prejudice to Defendant by issuing a proper limiting instruction. *See Schnitzer*, 145 F.3d at 731. The limiting instruction issued with respect to the judgment of conviction was an incorrect statement of law, and directed the jury to consider the evidence for an impermissible purpose, and no limiting instruction at all was issued with respect to the guilty plea. Despite the fact that Defendant was allowed to explain the circumstances of his plea, the difficulties that the Court and the Government had in recognizing the possibility that an *Alford* plea had been entered and in grasping the limitations of Defendant's guilty plea as an admission of knowledge make it nearly impossible for the Court to believe that the jury managed to do so in the absence of an instruction even explaining that such a plea *could* be entered, consistent with the law. Accordingly, the Court must find that its evidentiary errors were not harmless, and that a new trial is warranted.[18]

### III. Conclusion

On Defendant's motion, the Court has reconsidered it previous ruling on Defendant's Motion for New Trial. The Court finds that it erred in admitting evidence of Defendant's state court guilty plea and conviction in the trial of the instant case. The Court further finds that this error was not harmless, in that there is a significant possibility that the evidence had a substantial impact on the jury's verdict. Accordingly, Defendant's Motion for New Trial is GRANTED. The Court's Order of May

---

18. Because the Court has decided that a new trial is warranted in light of its evidentiary rulings at the first trial, the Court does not reach the merits of the other grounds Defendant asserts in support of his motion for reconsideration.

24, 2001 (Docket 163) is hereby VACAT-ED.

IT IS SO ORDERED.